# EXHIBIT "A"



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Mark Lopez Esq.<br>Greenberg Traurig, LLP<br>1221 Brickell Avenue<br>Floor 18TH<br>Miami, FL 33131-3238 |

| | |
|---|---|
| **Entity:** | Atlas One Financial Group, Llc<br>Entity ID Number 2171976 |
| **Entity Served:** | Atlas One Financial Group, LLC |
| **Title of Action:** | Rafael Selvas vs. Atlas One Financial Group, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Other |
| **Court:** | Miami-Dade County Circuit Court, Florida |
| **Case Number:** | 10-11459 CA04 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 02/24/2010 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Matthew L. Jones<br>305-270-8858 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

46219

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO:    10 -11459 CA0.4

RAFAEL SELVAS and MARIA CRISTINA
RUIZ DE SELVAS

     Plaintiffs,

v.

ATLAS ONE FINANCIAL GROUP, LLC,

     Defendants.
     _____ /

**CIVIL ACTION SUMMONS**

Srvd. 2 /29 /20 in at 11:05 m
by     C.M.C  CPS#101
2nd Judicial Circuit of FL

THE STATE OF FLORIDA
TO EACH SHERIFF OF SAID STATE:

     YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action to the
following Defendant:

     ATLAS ONE FINANCIAL GROUP, LLC

     By serving its Registered Agent:
     **CORPORATION SERVICE COMPANY**
     **1201 HAYS STREET**
     **TALLAHASSEE FL 32301-2525 US**

the president, vice-president, or other head of the corporation; or in the absence of the above, on the cashier,
treasurer, secretary, or general manger; or in the absence of the above, on any director; or in the absence of the
above, on any officer or business agent residing in the state; or in the absence of the above, on the registered
agent.

     Each defendant is required to serve written defenses to the complaint on Plaintiffs' attorney, to wit:
**Matthew L. Jones, Esq.**, whose address is **JONES & ADAMS, P.A., 9155 South Dadeland Boulevard, Suite
1506, Miami, FL 33156,** within 20 days after service of summons on that Defendant, exclusive of the day of
service, and to file the original of the defenses with the Clerk of this Court, either before service on Plaintiff's
attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that Defendant
for the relief demanded in the complaint. **FEB 1 9 2010**

     WITNESS my hand and the seal of said court on _____, 2010.

                    CLERK OF THE CIRCUIT COURT

                    DEBRA ANDERSON

(Seal)             By: _____
                       As Deputy Clerk

<u>AMERICANS WITH DISABILITIES ACT OF 1990</u>

IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT OF 1990, PERSONS NEEDING A SPECIAL ACCOMMODATION TO PARTICIPATE IN THIS PROCEEDING SHOULD CONTACT THE COURT ADA COORDINATOR, NO LATER THAN 7 DAYS PRIOR TO THE PROCEEDINGS AT (305) 349-7175 (VOICE), OR (305) 349-7174 (TDD).

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear you side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken with out further warning from the Court. There are other legal requirements. You may want to call an attorney right away. You may also contact a referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias , contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por excrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numbero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado desus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insurrisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un

avocate. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/ Plaintiff's Attorney" (Plaignant ou a son avocat) nomme cidessous.

DATED ON: This ___ day of February, 2010

**JONES & ADAMS, P.A.**
*Attorneys for the Plaintiffs*
9155 South Dadeland Blvd.
Suite 1506
Miami, Florida 33156
Telephone: (305)270-8858
Facsimile: (305) 270-6778
Email: matthew@jones-adams.com

By: _____
Matthew L. Jones, Esq.
Florida Bar No.: 909335

RAFAEL SELVAS and MARIA
CRISTINA RUIZ DE SELVAS

        Plaintiffs,

v.

ATLAS ONE FINANCIAL GROUP, LLC,

        Defendant.
_____/

ORIGINAL
FILED
FEB 1 9 2010
HARVEY RUVIN
CLERK

## COMPLAINT

RAFAEL SELVAS and MARIA CRISTINA RUIZ DE SELVAS (hereinafter referred to collectively as the "Plaintiffs"), by and through the undersigned counsel, hereby sue ATLAS ONE FINANCIAL GROUP, LLC (hereinafter referred to as "Atlas One") and allege as follows:

## JURISDICTION AND VENUE

1. This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.

2. Plaintiffs are citizens and residents of Mexico.

3. Defendant Atlas One is a limited liability company. Atlas One is authorized to conduct business in Florida and has been assigned Document No. M03000000528 by the Secretary of State. Atlas One is engaged in business in Florida and has its principal place of business at 200 South Biscayne Boulevard in Miami, Florida.

4. Defendant Atlas One is engaged in business as a broker-dealer and is registered with the Financial Industry Regulatory Authority ("FINRA") and the State of Florida Office of Financial Regulation.

5. Venue is proper in Miami-Dade County as it is where the causes of action alleged herein accrued.

## FACTUAL BACKGROUND

6. In late-2002 or early-2003, Eduardo Arana, a family friend of the Plaintiffs, visited Mr. Selvas at his home to solicit him to open a securities account with the investment bank he was then employed with, Compagnie Bancaire Geneve ("CBG") n/k/a SG Private Banking (Suisse) S.A.[1] (hereinafter referred to as "SG"). SG is a subsidiary of the French corporate and investment banking firm, Société Générale.

7. On or about January 13, 2003, the Plaintiffs opened five (5) investment accounts with SG, with Eduardo Arana as their account manager. Account Opening Documents for the Plaintiffs' Accounts with SG are attached hereto as **Exhibit A.**

8. The five accounts (hereinafter referred to as the "SG Accounts") are:

    (a) "19116", also known as 2006700.

    (b) "19116-2" or "19116 Rubrica 2," also known as 2006710.

    (c) "19116-3" or "19116 Rubrica 3," also known as 2006720.

    (d) "19116-4" or "19116 Rubrica 4," also known as 2006730.

    (e) "19116-5" or "19116 Rubrica 5," also known as 2006740.

---

[1] References in this Complaint to "SG Private Banking (Suisse) S.A." or "SG" are intended to refer to that entity by the name it was known at the time the alleged act, practice or event occurred or the alleged condition existed.

9. At all times, both prior to and after Eduardo Arana became employed with Atlas One, Mr. Selvas expressed to Eduardo Arana that he only wanted to invest in safe, secure financial products. Mr. Selvas also informed Eduardo Arana on numerous occasions that maximizing capital returns was not a key concern, and that he only wanted investments in which the principal was protected.

10. The Plaintiffs chose these investment objectives because they were approaching retirement age and sought an asset allocation consisting of a conservative mix of investments, such as bonds and cash equivalents, to ensure the capital they invested was preserved.

11. On or about June 2005, Eduardo Arana left SG to begin working for Atlas One as an account executive. Around this time, Eduardo Arana explained to the Plaintiffs that he could continue to manage their accounts through the special relationship Defendant Atlas One had with SG, and requested Plaintiffs' authorization to continue to manage their accounts.

12. Eduardo Arana further represented that he and Defendant Atlas One would make recommendations and enter orders in the SG Accounts that were consistent with the investment goals and objectives of the Plaintiffs. The Plaintiffs agreed, and as he had on several occasions before, Mr. Selvas explained that his investment objectives for the accounts were conservative.

13. Defendant Atlas One through Eduardo Arana confirmed to the Plaintiffs that he would only use the funds in the accounts to purchase low-risk notes, bonds, preferred stocks, and cash equivalents that provided steady returns.

14. On or about June 26, 2005, Eduardo Arana and Defendant Atlas One obtained authority from SG Private Banking (Suisse) S.A. to continue to manage the SG Accounts by executing a "Mandate entrusted to third parties for the administration of assets" (the "Mandate") with SG Private Banking (Suisse) S.A.[2]  This Mandate gave discretionary trading authorization over the SG Accounts to Eduardo Arana and Defendant Atlas One.

15. At all times until September 2008, Plaintiffs placed trust and confidence in Eduardo Arana and Defendant Atlas One, and Eduardo Arana and Defendant Atlas One knew and understood that Plaintiffs had placed trust and confidence in them.

16. From June 2005 through May 2007, the only purchases made in the SG Accounts were of notes, bonds, preferred stock, and cash equivalents, which are consistent with the Plaintiffs' investment objectives of income with capital preservation.  During this period of time, all transactions were initiated by Atlas One through Eduardo Arana, and communicated to the Plaintiff thereafter.

17. Beginning in June 2007, without the Plaintiffs' knowledge or authorization, the composition and risk profile of the SG Accounts was changed dramatically, and the account was traded in highly volatile structured products and stocks, all inconsistent with the Plaintiffs' stated investment objectives.  This unauthorized activity continued in the Plaintiffs' accounts until late-September of 2008.

18. Throughout the account relationship, Mr. Selvas was led to believe that Eduardo Arana, the account executive who purportedly understood Mr. Selvas' investment objectives, was the account executive at Atlas One handling his investment accounts.

---

[2] See "Mandate entrusted to third parties for the administration of assets," attached hereto as **Exhibit B.**

19. In late-September 2008, when the Plaintiffs discovered the Atlas One's unauthorized actions and the staggering losses produced in the accounts, they immediately demanded an explanation from Eduardo Arana. Eduardo Arana offered to meet with Mr. Selvas to discuss the losses to the SG Accounts.

20. At a meeting at the Plaintiffs' home in early-October 2008, Eduardo Arana first informed Plaintiffs that he was not the account executive actually managing their accounts, and that it was in fact his brother, Gerardo Arana, and Gustavo Hegewisch, also account executives with Defendant Atlas One, that had been managing the SG Accounts for some undisclosed period of time. Moreover, Eduardo Arana informed Plaintiffs that he was leaving Atlas One.

21. Upon information and belief, Eduardo Arana turned over management of the SG Accounts to Gerardo Arana and Gustavo Hegewisch on or about May 2007, without informing the Plaintiffs and without obtaining their consent.

22. At the October 2008 meeting, Eduardo Arana also explained to Mr. Selvas the investments that had been made in his and his wife's accounts, which consisted of volatile structured products and stocks. The Plaintiffs were unfamiliar with structured products and were never informed of their inherent risks by their account executive, Eduardo Arana, before Eduardo, Gerardo Arana, Gustavo Hegewisch and Defendant Atlas One began to trade structured products in the their accounts.

23. A few days after the meeting, on October 15, 2008, Mr. Selvas sent an email message to Eduardo Arana expressing his dissatisfaction with his management of the SG Accounts. In this email message, Mr. Selvas disapproved of the investments made in risky financial products contrary to his long-standing instructions and stated

investment objectives of income and capital preservation, and admonished Eduardo for making these trades without his knowledge or authorization.[3]

24. On or about January 26, 2009, the Plaintiffs executed a document by which they cancelled and revoked the Mandate and any authorization to Defendant Atlas One to manage and trade in the Accounts.[4]

25. When he was hired by Defendant Atlas One in May of 2005, Gerardo Arana's regulatory record (known as a CRD System Report) disclosed that on August 9, 2002, while employed at Merrill Lynch, Gerardo Arana was accused by a customer, Sergio Bueno Gonzalez, of placing him "into unsuitable, higher risk bonds and stocks," resulting in losses of $70,000. Defendant Atlas One was aware of this disclosure when it hired Gerardo Arana.

26. The trading in the SG Accounts by Defendant Atlas One through Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch, caused staggering losses because, among other things, these individuals:

    (a) concentrated the entire portfolio in too few securities,

    (b) chose securities that were highly volatile (i.e. structured products and stocks),

    (c) ignored the Plaintiffs' investment objectives of income growth and capital preservation, and

    (d) violated the instructions to purchase only safe, income-producing securities, such as notes, preferred stocks, bonds, and cash equivalents.

---

[3] See Mr. Selvas' email to Eduardo Arana, dated October 15, 2008. Plaintiffs attach copies of electronic mail correspondence between them and Eduardo Arana hereto as **Exhibit C.**

[4] See Plaintiffs' Letter Revoking Atlas One's Authorization to SG Private Banking (Suisse) S.A., dated January 26, 2009, attached hereto as **Exhibit D.**

27. The trading in the SG Accounts by Defendant Atlas One through its employees, Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch, produced losses in excess of $875,000 as of October 31, 2008.

28. Atlas One, through its account executives and employees, did not take any action to prevent losses in the SG Accounts, and instead continued to invest in financial products that were outside the Plaintiffs documented risk tolerance, which only resulted in greater losses in the SG Accounts.

29. It is apparent that Eduardo Arana participated little, if at all, in the management of the Plaintiffs' accounts after May 2007, and he simply delegated management of the SG Accounts to his brother, Gerardo, and Gustavo Hegewisch, who thereafter traded in Plaintiffs' accounts without advising the Plaintiffs or obtaining their authorization.

30. Eduardo Arana, Gerardo Arana and Gustavo Hegewisch engaged in reckless and egregious behavior in their mismanagement of the SG Accounts; trading in structured products, equities and other alternative investments that were well outside the Plaintiffs' tolerated level of risk, as well as conducting these unauthorized transactions without the Plaintiffs' knowledge or consent.

31. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, never advised the Plaintiffs as to the unauthorized investments made in their accounts and never informed them of the risks associated with investments made in their accounts, such as structured products.

32. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, executed numerous trades in the Plaintiffs' accounts without the Plaintiffs'

knowledge or permission. Additionally, the Plaintiffs did not receive trade confirmations for the trades made without their knowledge or approval.

33. In order to conceal of their activities and the losses caused, Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, withheld from the Plaintiffs statements and confirmations that indicated the transactions being made in their accounts.

34. Aside from the lack of communication and candor with the Plaintiffs as to the condition of the SG Accounts and important events and information relating to the accounts, the investments Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One traded in did poorly and were well outside the documented risk tolerance of the Plaintiffs.

35. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, frequently misrepresented the value and condition of the SG Accounts to the Plaintiffs intending to mislead them with respect to the substantial losses they caused.[5]

36. In light of the Plaintiffs' conservative investment objectives and despite the extent of the losses to the Plaintiffs' accounts, Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, reprehensibly, never alerted the Plaintiffs to these losses, never implemented a strategy to minimize these losses, or did not otherwise take any action to prevent these losses.

---

[5] In one email message from June 3, 2008, Eduardo Arana writes to Mr. Selvas in response to his request for his accounts' positions, and tells him to disregard the valuation of his account investments and offers only to explain it to Mr. Selvas verbally in a telephone call. See **Exhibit E.**

37. In approximately January 2009, Defendant Atlas One fired Eduardo Arana and Gerardo Arana.

38. Gustavo Hegewisch has not been registered with Atlas One since March of 2009.

39. At all time material hereto, Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch were acting as employees and agents of Defendant Atlas One. As a principal and employer, Defendant Atlas One is vicariously liable for the acts and omissions of its agents and employees.

<u>**COUNT ONE**</u>
<u>**VIOLATIONS OF SECTION 517.301, ET SEQ., OF THE FLORIDA STATUTES**</u>

40. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. This claim is asserted against Atlas One and is based upon Section 517.301 of the Florida Statutes, Florida's Blue Sky laws.

42. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, practices, and courses of business which operated as a fraud and deceit upon the Plaintiffs, and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to the Plaintiffs.

43. The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to conceal Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One's wrongdoing and dismal mismanagement of the Plaintiffs' accounts, to distract Plaintiffs from the staggering losses

occurring in the accounts, and to continue to trade in the accounts for their own benefit and not that of the Plaintiffs.

44. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, pursuant to said scheme, plan, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, or participated in the preparation, issuance and distribution of deceptive and materially false and misleading statements to the Plaintiffs.

45. The omitted facts, account statements and transaction confirmations discussed in this Complaint were material in that there is a substantial likelihood that a reasonable investor would consider these facts important in making investment decisions.

46. The Plaintiffs, in ignorance of the false and misleading statements set forth herein and the deceptive and manipulative devices and contrivances employed by Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One, relied to his detriment on such misleading statements and omissions.

47. Plaintiffs has been damaged as a result of the wrongs of Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One in an amount to be proved at trial, but believed to be in excess of $875,000.00, exclusive of interests, fees, and other costs.

48. For the reasons discussed herein, Atlas One violated Section 517.301 of the Florida Statutes in that, in connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security it: (a) employed devices, schemes, or artifices to defraud; (b) it made untrue statements

of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) it engaged in practices or courses of business which operated or would operate as a fraud or deceit upon any person, in connection with its management of the Plaintiffs' accounts.

49.  As the employer of Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch and any other agent or employee of Atlas One that may have been involved in the mismanagement of the Plaintiffs' accounts, Defendant Atlas One is liable for the actions of its agents and employees.

WHEREFORE, the Plaintiffs, RAFAEL SELVAS and MARIA CRISTINA RUIZ DE SELVAS, pray for entry of Judgment against ATLAS ONE FINANCIAL GROUP, LLC, awarding Plaintiffs the following:

(a) Rescission of securities still owned by the Plaintiffs, or for damages for securities the Plaintiffs have sold, as available pursuant to § 517.301, Florida Statutes.

(b) Interest;

(c) Attorneys' fees in accordance with Chapter 517.211 et seq. Florida Statutes;

(d) Costs;

(e) Such other relief as is fair.

## COUNT TWO
## BREACH OF FIDUCIARY DUTY

50.  Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

51. Plaintiffs and Defendant Atlas One, through its account executives, Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch, and through any other employee of Atlas One involved with the accounts, shared a relationship whereby Plaintiffs reposed trust and confidence in Defendant Atlas One, and Defendant Atlas One undertook such trust and duties.

52. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One shared a fiduciary relationship with the Plaintiffs based on the discretionary authority they exercised over the SG Accounts, their superior knowledge concerning securities and investments, and because the Plaintiffs had reposed their trust and confidence in them.

53. By virtue of their fiduciary relationship, Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One owed, among other things, the following duties and obligations to the Plaintiffs:

    (a) To act in the best interest of the Plaintiffs and to deal with them honestly and in good faith and with the utmost degree of care.

    (b) To act as a "prudent man" and to recommend only prudent and suitable investments consistent with the Plaintiffs' investment objectives for the SG Accounts;

    (c) To maintain Plaintiffs' investments in a professional and prudent manner;

    (d) To manage the SG Accounts in a manner that comports with the needs and objectives of the Plaintiffs;

    (e) To follow the Plaintiffs' instructions in managing the accounts;

(f) To keep the Plaintiffs informed of any market changes that could affect their interests and act responsibly to protect those interests;

(g) To keep the Plaintiffs informed as to each transaction completed in their accounts; and

(h) To explain forthrightly to the Plaintiffs the practical impact and potential risks of the transactions and strategy employed for their accounts.

54. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One breached the duties owed to the Plaintiffs by, among other things,

(a) Withholding pertinent information concerning Plaintiffs' accounts,

(b) Making unauthorized transactions in the accounts,

(c) Engaging in a course of trading that was completely inconsistent with the investment objectives of the Plaintiffs,

(d) Investing in securities that far exceeded Plaintiffs' risk tolerance,

(e) Not alerting the Plaintiffs to the staggering losses in their accounts or otherwise taking any action to prevent these losses,

(f) Concealing their improper and unsuitable activity, along with the losses that such activity was producing in the SG Accounts, by, among other things, withholding trade confirmations and account statements, and

(g) Trading in the SG Accounts solely for their own benefit and not the benefit of the Plaintiffs.

55. Had Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One performed the necessary due diligence, they would have known that the

investments made were unsuitable given the Plaintiffs' investment goals and preference for conservative, low-risk securities with steady returns.

56. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One's breaches of fiduciary duty caused Plaintiffs damages currently known to be in excess of $875,000.

57. As the employer of Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch and any other agent or employee of Atlas One that may have been involved in the mismanagement of the Plaintiffs' accounts, Defendant Atlas One is liable for the actions of its agents and employees.

WHEREFORE, the Plaintiffs, RAFAEL SELVAS and MARIA CRISTINA RUIZ DE SELVAS, pray for entry of Judgment against ATLAS ONE FINANCIAL GROUP, LLC, awarding Plaintiffs the following:

(a) Compensatory damages that will make the Plaintiffs whole, consisting of, without limitation, unlawful commissions/markups; trading losses; and such other damages that are still yet unknown. The current *known* damage amount sought is approximately EIGHT HUNDRED AND SEVENTY-FIVE THOUSAND ($875,000.00) dollars;

(b) Interest;

(c) Reasonable attorneys' fees;

(d) Costs;

(e) Such other relief as is fair.

## COUNT THREE
## FRAUD AND DECEIT

58. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

59. The actions of the Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One alleged above constituted a fraud and deceit upon the Plaintiffs.

60. In order to conceal their fraudulent conduct and the losses caused by such conduct, Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One intentionally omitted to disclose material facts to the Plaintiffs regarding the conduct they were engaged in and the losses accruing in their accounts.

61. Eduardo Arana, Gerardo Arana, Gustavo Hegewisch, and Defendant Atlas One also made false representations of material fact concerning the condition of their accounts and the investments made, knowing such representations were false, with the intent to induce the Plaintiffs to rely on these representations.

62. The Plaintiffs did rely on these fraudulent misrepresentations to their detriment, and as a result suffered damages currently known to be in excess of $875,000.

63. As the employer of Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch and any other agent or employee of Atlas One that may have been involved in the mismanagement of the Plaintiffs' Accounts, Defendant Atlas One is liable for the actions of its agents and employees.

WHEREFORE, the Plaintiffs, RAFAEL SELVAS and MARIA CRISTINA RUIZ DE SELVAS, pray for entry of Judgment against ATLAS ONE FINANCIAL GROUP, LLC, awarding Plaintiffs the following:

(a) Compensatory damages that will make the Plaintiffs whole, consisting of, without limitation, unlawful commissions/markups; trading losses; and such other damages that are still yet unknown. The current *known* damage amount sought is approximately EIGHT HUNDRED AND SEVENTY-FIVE THOUSAND ($875,000.00) dollars;

(b) Interest;

(c) Reasonable attorneys' fees;

(d) Costs;

(e) Such other relief as is fair.

## COUNT FOUR
## NEGLIGENT SUPERVISION AND HIRING

64.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

65.    Defendant Atlas One owed Plaintiffs a duty to exercise reasonable care in hiring and supervising all of its registered investment advisers, including Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch, in order to protect its customers and members of the investing public, including the Plaintiffs.

66.    Defendant Atlas One failed to exercise reasonable care by

(a) Hiring Gerardo Arana and failing to exercise a higher level of supervision over him given his prior disclosed customer complaints in his CRD System Report, which Atlas One was aware of at the time of hiring;

- 16 -

(b) Failing to exercise a reasonable level of supervision over Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch, by reviewing the trades made in the Plaintiffs' accounts to ensure that they were consistent with the Plaintiffs' stated investment objectives;

(c) Failing to detect the substantial losses that occurred in the Plaintiffs' accounts from month to month, caused by a drastic change in the make up of the Plaintiffs' portfolio; and

(d) Failing to alert the Plaintiffs of the mismanagement and fraudulent activity of Eduardo Arana, Gerardo Arana, and Gustavo Hegewisch, as discussed herein.

WHEREFORE, the Plaintiffs, RAFAEL SELVAS and MARIA CRISTINA RUIZ DE SELVAS, pray for entry of Judgment against ATLAS ONE FINANCIAL GROUP, LLC, awarding Plaintiffs the following:

(a) Compensatory damages that will make the Plaintiffs whole, consisting of, without limitation, unlawful commissions/markups; trading losses; and such other damages that are still yet unknown. The current *known* damage amount sought is approximately EIGHT HUNDRED AND SEVENTY-FIVE THOUSAND ($875,000.00) dollars;

(b) Interest;

(c) Reasonable attorneys' fees;

(d) Costs;

(e) Such other relief as is fair.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

DATED this 16th day of February, 2010.

Respectfully submitted;

JONES & ADAMS, P.A.
*Attorneys for the Plaintiffs*
9155 S. Dadeland Blvd., Suite 1506
Miami, Florida 33156
Telephone: (305) 270-8858
Facsimile: (305) 270-6778
Email: matthew@jones-adams.com

By: _____
     R. Matthew L. Jones
     Florida Bar No. 909335



# COPIE

209980
2006700 ← GEN
Demande d'ouverture/Cond. generales

**COMPAGNIE BANCAIRE GENEVE BANKING CORPORATION GENEVA**

**OPENING OF AN ACCOUNT
NATURAL PERSONS**

Account Nr. _____19116___ 2 006 700___

| | FAMILY NAME | FIRST NAME(S) | DATE OF BIRTH | NATIONALITY(IES) |
|---|---|---|---|---|
| (1) | RAFAEL SELVAS C. | | 08/11/44 | MEXICANA |
| (2) | MARIA CRISTINA R DE SELVAS | | 05/26/57 | MEXICANA |
| (3) | | | | |
| (4) | | | | |

| ADDRESS | TELEPHONE(S) private/business/mobile | FAX | E-MAIL |
|---|---|---|---|
| MANANTIALES # 61 | 011 52 55 5758-77-73 | 011 52 55 5558-79-98 | r_selvas a hotmail.com |
| COL. JARDINES DEL PEDREGAL MEXICO, D.F. C.P. 01900 | | | |
| | | | |
| | | | |

Residence and/or long stay in a place different from the address indicated above

(1)  ☐ yes  ☒ no  (if yes, exact address) _____
(2)  ☐ yes  ☒ no  (if yes, exact address) _____
(3)  ☐ yes  ☒ no  (if yes, exact address) _____
(4)  ☐ yes  ☒ no  (if yes, exact address) _____

| PERSON TO CONTACT IN EMERGENCIES: |
|---|
| |

I/we the undersigned has/have signed and taken cognizance of the Bank's General Conditions.

Place and Date  MEXICO, D.F.  JANUARY 13th, 2003       The holder(s)  (1) _____
(2) _____
(3) _____

Ref./Tel. _____       (4) _____

## Exhibit A



**CBG**

COMPAGNIE
BANCAIRE GENEVE
BANKING
CORPORATION GENEVA

**COPIE**

LIST OF AUTHORISED SIGNATURES
NATURAL PERSONS

Account Nr. _____ 19116   2·006·700

209970

2006700  005

Liste de signatures autorisées

## Holder(s) of the account

| FAMILY AND FIRST NAME(S) OF THE HOLDER(S) OF THE ACCOUNT | INDIVIDUAL | JOINTLY ANY | SIGNATURE SPECIMEN |
|---|---|---|---|
| (1) RAFAEL SELVAS C. | X | | |
| (2) MARIA CRISTINA R DE SELVAS | X | | |
| (3) _____ | ---- | --- | ------ |
| (4) _____ | ------ | ---- | ------- |

The authorised signatory/ies listed below is/are authorised, until revocation and without right of substitution, to represent me/us in relation with the Bank and may exercise all the rights that I/we hold in relation to business relations with the Bank.

## Authorised signatory/ies

| FAMILY AND FIRST NAME(S) | ADDRESS | NATIONALITY IDENTIFICATION DOCUMENT | FORM OF SIGNATURE | SIGNATURE SPECIMEN |
|---|---|---|---|---|
| (1) | | | Individual Jointly any | |
| (2) | | | Individual Jointly any | |
| (3) | | | Individual Jointly any | |
| (4) | | | Individual Jointly any | |

By putting his/their signature(s) hereon, the authorised signatory/ies declare(s) that he/they have/has taken cognizance of the Bank's General Conditions and recognise(s) that the said signature(s) is/are bounding on him/them.

Place and date MEXICO, D.F.   JANUARY 13th, 03

Signature of
the holder(s)
of the
account

(1) _____

(2) _____

(3) _____

(4) _____

COPIE

CERTIFIED TRUE COPY OF
ORIGINAL DOCUMENT

INITIALS 

2 006 700

*[handwritten, rotated text along left side]*

En caso de que el titular de este pasaporte requiera de asistencia o protección del gobierno mexicano, se recomienda acuda a la representación diplomática o consular más cercana. Para su protección escriba nombre y dirección de una persona a quien se pueda avisar en caso de emergencia.

Nombre: Ma Cristina de Selvas
Dirección: Circuito Fuentes del Pedregal 164
Entidad Federativa: Mexico D.F.
C.P. 14140 Teléfono (525) 568-0319

DOMICILIO DEL TITULAR / HOLDER'S ADDRESS /
ADRESSE DU TITULAIRE
Dirección: Circuito Fuentes Pedregal 164
Entidad Federativa: Mexico D.F.
C.P. 14140 Teléfono (525) 568-0319

ESTE PASAPORTE ES VALIDO PARA TODOS LOS PAISES
THIS PASSPORT IS VALID FOR ALL COUNTRIES
CE PASSPORT EST VALABLE POUR TOUS PAYS

Firma del titular / Holder's signature / Signature du titulaire

---

PASAPORTE
PASSPORT
PASSPORT

ESTADOS UNIDOS MEXICANOS

Tipo/Type/Categoría: **P**
Clave del país de expedición/Code of Issuing State/Code du pays émetteur: **MEX**
Pasaporte No / Passport No. / No. de Passeport: **97390049240**

Apellidos / Surname / Nom
**SELVAS**

**CABALLERO**

Nombres / Given names / Prénoms
**RAFAEL**

Nacionalidad / Nationality / Nationalité
**MEXICANA**

CURP/Personal No. personnel

Fecha de nacimiento / Date of birth / Date de naissance
**11 AGO 1944**

Sexo/Sex/Sexe: **M**
Lugar de nacimiento / Place of birth / Lieu de naissance
**TUXTLA GUTIERREZ, CHIS.**

Fecha expedición / Date of issue / Date de délivrance
**01 DIC 1997**

Fecha caducidad / Expiration date / Date d'expiration
**01 DIC 2007**

Autoridad / Authority / Autorité
**TLALPAN**

Observaciones / Remarks / Observations

P<MEXSELVAS<CABALLERO<<RAFAEL<<<<<<<<<<<<<<<
3900492405MEX4408110M0712017<<<<<<<<<<<<<<<2

209977
2006700 660
Pièce de légitimation

CERTIFIED TRUE COPY OF
ORIGINAL DOCUMENT

INITIALS 

2.006.700

En caso de que el titular de este pasaporte requiera de asistencia o protección del gobierno mexicano, se recomienda acuda a la representación diplomática o consular más cercana. Para su protección escriba nombre y dirección de una persona a quien se pueda avisar en caso de emergencia.

Nombre:

Dirección:

Entidad Federativa:

C.P.

**DOMICILIO DEL TITULAR / HOLDER'S ADDRESS / ADRESSE DU TITULAIRE**

Dirección:

Entidad Federativa:

C.P.

Teléfono:

ESTE PASAPORTE ES VALIDO PARA TODOS LOS PAISES
THIS PASSPORT IS VALID FOR ALL COUNTRIES
CE PASSPORT EST VALABLE POUR TOUS PAYS

Firma del titular / Holder's signature / Signature du titulaire

**ESTADOS UNIDOS MEXICANOS**

PASAPORTE
PASSPORT
PASSPORT

Tipo/Type/
Catégorie **P**

Clave del país de expedición/Code of issuing State/Code du pays d'émetteur **MEX**

Pasaporte No / Passport No / No du Passeport **97390049239**

Apellidos / Surname / Nom
**RUIZ**
**DE SELVAS**

Nombres / Given names / Prénoms
**MARIA CRISTINA**

Nacionalidad / Nationality / Nationalité
**MEXICANA**

CURP/Personal No /No personal

Fecha de nacimiento / Date of birth / Date de naissance
**26 MAY 1957**

Sexo/Sex/Sexe
**F**

Lugar de nacimiento/Place of birth/Lieu de naissance
**MEXICO, D.F.**

Fecha expedición / Date of issue / Date de délivrance
**01 DIC 1997**

Fecha caducidad / Expiration date / Date d'expiration
**01 DIC 2007**

Autoridad / Authority / Autorité
**TLALPAN**

Observaciones / Remarks / Observations



```
P<MEXRUIZ<DE<SELVAS<<MARIA<CRISTINA<<<<<<<<<
3900492391MEX5705263F0712017<<<<<<<<<<<<<<2
```



209976

Piece de legitimation



# COPIE



Instrument à risques particuliers

CBG
COMPAGNIE
BANCAIRE GENEVE
BANKING
CORPORATION GENEVA

Compte n° / Account Nr. / Konto - Depot Nr. / Conto No

19116   2.006700

Le soussigné reconnaît avoir pris connaissance et reçu un exemplaire de la brochure
« Risques particuliers dans le commerce de titres ».

Der/die Unterzeichnete erklärt, dass er/sie ein Exemplar der Broschüre «Besondere Risiken im Effektenhandel»
erhalten und zur Kenntnis genommen hat.

The undersigned confirms that he or she has received and read a copy of the brochure containing
the « Special Risks in Securities Trading ».

Il sottoscritto riconosce di aver preso conoscenza e di aver ricevuto un esemplare dell'opusculo
« Rischi particolari nel commercio di valori mobiliari ».

Lieu / Place / Ort / Luogo   **MEXICO, D.F.**                    Signature / Signature / Unterschrift / Firma

Date / Date / Datum / Data   **JANUARY 13th, 2003.**

Visa du gestionnaire / Manager's initials /
Visum des Anlageberaters / Visto del gestore



**COPIE**

### FIDUCIARY DEPOSITS,
### FORWARD FOREIGN EXCHANGE
### AND PRECIOUS METALS AGREEMENT

209987



Contrat a terme devises/métaux

Account Nr _____ 19116  2.006700

The holder(s) of the above-mentioned account (hereafter referred to as « the Customer ») hereby grants/grant authority to CBG Compagnie Bancaire Genève (hereafter referred to as « the Bank ») to :

1. deposit in its own name, but on behalf and at the sole risk of the Customer and within the existing credit balances, funds on a fiduciary basis with any bank or financial institution and/or affiliated banks at its entire discretion and subject to the requirements, practices, laws or regulations imposed by the respective foreign country or country of the currency's origin.

| | |
|---|---|
| Place and date | MEXICO, JANUARY 13, 2003 |
| Signature(s) | *[signatures]* |

2. enter into any Forward Foreign Exchange and/or Precious Metals transaction provided the Customer meets the margin requirements as requested by the Bank and has signed the standard Deed of Pledge and Declaration of Assignment. If the collateral falls below the required amount for any reason, the Customer shall be bound to provide immediate additional funds to cover the difference. Should the Customer fail to provide such additional coverage, the Bank shall be entitled to take all necessaray steps to restore the overall collateral and/or liquidate transactions as well as dispose of pledged security.

| | |
|---|---|
| Place and date | MEXICO, JANUARY 13, 2003 |
| Signature(s) | *[signatures]* |

In all other respects the Terms and Conditions of the Bank shall apply.

223.107 e/03.02



**COMPAGNIE
BANCAIRE GENEVE
BANKING
CORPORATION GENEVA**

# COPIE

**CREDIT AUTHORISATION**



**209973**

2006700 021

*Autorisation de credit*

Account Nr. _19116_ _2.006700_

The undersigned, holder(s) of the above account (hereinafter: "the Client") request(s) CBG Compagnie Bancaire Genève (hereinafter: "the Bank") to grant him/them an advance on current account or a lombard credit backed by the pledge of his/their assets held with the Bank, up to the amount required to cover:

[X]   the value of the loan determined by the Bank
      or
[ ]   the maximum amount of: _____

The Client acknowledges and accepts:

- that the credit conditions are those indicated in the statements and notices communicated by the Bank;
- that his/their assets are pledged to cover the credit in accordance with the duly signed General Deed of Pledge;
- that the duration of the credit is one year, starting from its acceptance by the Bank, and tacitly renewable from year to year , subject to the Bank's General Conditions and, in particular, art. 14;
- that for all the other aspects not regulated herein, the Bank's General Conditions apply.

Place and date _MEXICO, D.F.    JANUARY 13th,  2003_   Signature(s)



**CBG**

COMPAGNIE
BANCAIRE GENEVE
BANKING
CORPORATION GENEVA

# COPIE



209978

2006700    790

Decharge telecom

## RELEASE FOR ORDERS BY TELEPHONE/FAX
## AND/OR OTHER COMMUNICATIONS MEDIA

Account number    **19116**

2.006.700

The undersigned authorise(s) CBG Compagnie Bancaire Genève (hereinafter referred to as the «Bank») to accept, take and enact instructions issued by telephone, telefax or other communications media hereinafter referred to as «the instructions».

The instructions may relate to any purchase and/or sale of securities, delivery of securities and/or transfer of funds to third parties by debiting the above-mentionned account.

The Bank shall accept and act upon the instructions given by the undersigned and/or by a person designated or authorised by the undersigned, as determined from the signatures filed with the Bank.

The undersigned:

- confirms that he is aware of the risks connected with the use of these forms of communication, particularly those which may arise as a result of an error or misunderstanding when sending the instructions, and as a result of improper use by third parties;
- declares that he accepts all the consequences of this form of communication;
- understands and agrees that the Bank may, in its absolute discretion, ask for further details in order to establish the identity of the issuer of the instructions;
- acknowledges that the Bank is entitled, but not required to request written confirmation of the instructions;
- acknowledges that the Bank does not incur any liability for the refusal to execute the orders given by persons whose identity has not been properly established.

In all other respects, the General Conditions of the Bank shall apply.

Place **MEXICO, D.F.**

Signature

Date **JANUARY 13th, 2003.**

223,123 e/03.02



**COPIE**

## STANDING INSTRUCTIONS

Account Nr. ___19116___  _2'006'700_

| | |
|---|---|
| Type of Account | ☐ Account Holder's Name |
| | ☒ Numbered Account |
| Reference Currency (for the Account Performance) | ☒ USD / ☐ Euro / ☐ CHF / ☐ Other ——— |
| Currency Valuation | ☒ USD / ☐ Euro / ☐ CHF / ☐ Other ——— |
| Language | ☐ French / ☐ English / ☐ German / ☐ Italian / ☒ Spanish / ☐ Other |
| Correspondence | ☐ With heading / ☒ Without heading ✓ |

Address 1 : ☐ To be kept at the Bank / ☒ To be sent to: _Señor Rafael SELVAS Y/o Señora Maria Cristina RUIZ DE SELVAS_

~~MANANTIALES # 61~~    _Anulé (mail 21.3.03)_

COL. JARDINES DEL PEDREGAL

MEXICO, D.F.   C.P. 01900

| Periodicity: | Daily (Qty) | Weekly (Qty) | Monthly (Qty) | Quarterly (Qty) | Semi-annually (Qty) | Annually (Qty) |
|---|---|---|---|---|---|---|
| Advices | | | X | | | |
| Statements | | | X | | | |
| Portfolio Valuation | | | X | | | |
| Fiscal Certificate | | | | | | |
| Tax Statement | | | | | | |

Address 2 : ☒ To be sent to:

~~CBG~~

701 BRICKELL AV. SUITE 1740

MIAMI, FLORIDA 33131    _Atlas One Financial Group LLC (mail 9.10.05)_

| Periodicity: | Daily (Qty) | Weekly (Qty) | Monthly (Qty) | Quarterly (Qty) | Semi-annually (Qty) | Annually (Qty) |
|---|---|---|---|---|---|---|
| Advices | | | . | | | |
| Statements | | | X | | | |
| Portfolio Valuation | | | X | | | |
| Fiscal Certificate | | | | | | |
| Tax Statement | | | | | | |

Place and date **MEXICO, D.F.   JANUARY 13th, 2003**    Customer Signature(s) _Ma Cristina Ruiz_
_Selvas_

Account Manager Signature _E. Arana_
Code  _037 / 160 / 037 /_



**CBG**

COMPAGNIE
BANCAIRE GENEVE
BANKING
CORPORATION GENEVA

*envoyé credits*

# COPIE

## INSTRUCTIONS TO ISSUE A GUARANTEE

23 OCT '03 9:01

Account Nr. _19116 / 200'6700_

The undersigned (hereafter referred to as « the Customer ») hereby irrevocably instructs CBG Compagnie Bancaire Genève (hereafter referred to as « the Bank ») to issue the following instrument :

Indemnity ☐          Crédit Card ☑          Bail ☐
AMERICAN EXPRESS

Amount: _$ 75,000 DLRS._

Beneficiary: _CBG Compagnie Bancaire Genève, MIAMI_

Maturity: _Duration of the credit card and its renewals_

Re: _Agreement American Express, MIAMI_

In this connection and pursuant to the terms of the Deed of Pledge and Declaration of Assignment, the Bank retains a security interest in all securities and other property held in the Customer's accounts insofar as there remains due from the Customer any liability under the above guarantee and the Customer hereby authorizes the Bank to debit his account in order to meet any liabilities incurred on his behalf hereunder, including charges and commission connected with said guarantee.

The present Instructions incorporate by reference and are subject to the Terms and Conditions of the Bank.

Place and date _Mex 9/22/03_          Signature(s) _Ma Cristina Ruiz_

FICHIER CENTRAL
Signature vérifiée conforme

209984

2006700 - 814

Demande d'emission de garantie

721 108 ed'3 01



**COMPAGNIE
BANCAIRE GENEVE
BANKING
CORPORATION GENEVA**



209972
2006700-016
Acte de nantissement

**DEED OF PLEDGE AND
DECLARATION OF ASSIGNMENT**

The undersigned _____ 19116 _____

_____ 2'006'700 _____

(hereinafter referred to as the Pledgor)

1. hereby declares that all the securities and other property in or for any account and sub-account now or hereafter opened in which he has an interest or which at any time are in the possession or under the control of CBG Compagnie Bancaire Genève (hereinafter referred to as « the Bank ») shall be subject to a general lien for the discharge of all the indebtedness or any other obligation he may have to the Bank and the Bank retains a permanent security interest in all such securities and other property held or to be held by the Bank in the Pledgor's accounts and sub-accounts, including securities held for safekeeping either in street name or by a securities depository (hereinafter referred to as the « Collateral ») insofar as there remains due from

_____ 19116 _____

(hereinafter referred to as « the Debtor »)
any outstanding monies, securities and other indebtedness and liabilities of whatever nature to the Bank and any charges deriving therefrom.

2. hereby declares and acknowledges that the Collateral shall cover any and all present and or future claims including and without limitation principal, interest, commission, taxes and legal expenses related to claims within the framework of the existing business relationship with the Bank and insofar as there remains due any indebtedness and liabilities to the Bank in the account and any sub-account.

3. hereby declares and agrees that the Bank, including its branches has all the rights of a secured party over the Collateral for any claim of the Bank and/or its branches.

4. agrees that, under the terms of the present Deed of Pledge, items which are not in bearer form are hereby validly endorsed in blank in favor of the Bank.

5. further undertakes to take any necessary steps deemed necessary to create, maintain and/or perfect the security interest of the Bank over the Collateral (including without limitation to assign the Collateral not in bearer form) and the Bank is entitled, within the framework of its Terms and Conditions, at its discretion and without any liability for failing to do so, to take similar measures in Switzerland and abroad for the account and at the risks of the Pledgor.

6. agrees that the Bank is authorized to determine as to which claim or claims the Collateral or the proceeds thereof shall apply and irrevocably waives any objection therefrom. The Bank may in its absolute discretion determine the terms and conditions of liquidation.

7. undertakes that if and where the Bank requests the Pledgor – or as the case may be the Debtor – to take any step to maintain, adjust or perfect the Bank's security interest in anything which is supposed to form the Collateral, then the Pledgor and/or the Debtor will do so without delay. If he/they shall default in or fail to perform or otherwise disaffirm or repudiate any transaction with the Bank, the Bank may cancel and liquidate any transaction and sell any of the Collateral in its possession or under its control at its absolute discretion either by legal execution or by free sale:

8. further acknowledges that where the Debtor is in default, the Bank is entitled to liquidate the Collateral at its absolute discretion either by legal execution proceedings or by free sale.

9. hereby authorizes the Bank to re-pledge the Collateral in favor of any third party as a subsequent Collateral to cover any liability of the Pledgor to said third party.

10. Any notice or other communication by the Bank to the Pledgor and the Debtor will be sent to their last known address.

11. **The present Agreement is governed by, and shall be construed in accordance with, Swiss Law and the parties irrevocably submit to the jurisdiction of the courts of Geneva, Switzerland pursuant to Clause 22 of the Bank's standard Terms and Conditions.**

12. The present Agreement incorporates and is subject to the Terms and Conditions of the Bank.


Place and date _MEXICO, D.F.  JANUARY 13th, 2003_      Signature(s)

The Debtor _____      The Pledgor _____
(Where pledged by a third party)



**COPIE**

COMPAGNIE
BANCAIRE GENEVE
BANKING
CORPORATION GENEVA

TERMS AND CONDITIONS

Account Nr_____19116____2 · 006 · 300

The following Terms and Conditions are intended to regulate the relations between CBG Compagnie Bancaire Genève (« the Bank ») and its customers (hereinafter collectively referred to as « the Customer ») and all transactions conducted with or for the Customer shall be governed by these Terms and Conditions and any applicable laws.

### 1. Signatures

Signatures and signing powers given in writing to the Bank are alone valid until cancelled in writing, irrespective of any entries to the contrary in any Commercial Register or other publications.

### 2. Verification

For verification purposes, the Bank will compare signatures with the existing specimens on file. The Bank may accept and act without further enquiry upon any instruction, commitment, notice or request given or which purports or is believed in good faith to be given by the Customer.

### 3. Instructions

In the absence of any other written agreement, the Bank will act on any instruction which the Bank may reasonably believe to come from the Customer or to have been given on his behalf. Except where the Bank is negligent or willfully commits a default in acting on the Customer's instructions, the Bank will not be responsible for any loss resulting from the use of any system of communication and/or other media.

### 4. Incapacity

The Bank will not be responsible for any loss resulting from legal incapacity of the Customer or of a third party, unless such incapacity is publicly issued or notified in writing to the Bank.

### 5. Notices

Notices are deemed validly made when dispatched to the last address notified by the Customer. The date indicated on the copy or on mailing records of the Bank is presumed to be the mailing date.

### 6. Mail retained

Mail which is to be kept on deposit at the Bank is deemed delivered and/or received on the date it bears. The Customer hereby expressly authorizes the Bank to destroy any mail beyond five years.

### 7. Objections

Any objection by the Customer in connection with the execution or non-execution of any instruction of whatever nature as well as any objection to any statement of account or deposit must be made promptly upon receipt of the respective communication, but at the latest within the time specified by the Bank. Any objection to a stock exchange order must be made on the day following the relevant transaction date. The Bank will not be liable for any loss, liability or cost suffered or incurred by the Customer as a result of non-execution or belated execution of any instruction (stock exchange orders excluded) and the Bank will only accept responsibility for loss of interest, unless specifically warned.

### 8. Third Party

The Bank is authorized to execute transactions using third parties and neither the Bank nor any affiliate shall be liable to account to the Customer for, or to disclose to the Customer, any profit, charges or other remuneration made or received by the Bank or any affiliate, except when required to do so under any applicable law.

### 9. Security and Rights of Lien ans Set-Off

All securities and other property held by the Bank or its nominees for the Customer's account and subject to its order shall be subject to a **general lien** in favour of the Bank, insofar as there remains due from the Customer to the Bank any outstanding monies, securities and other indebtedness and liabilities of whatever nature. The Bank further may **set off** any obligation to the Customer against any of the Customer's obligations to the Bank.

## 10. Current Account

The Bank credits and debits interest, commissions and fees agreed upon or customary as well as any applicable taxes and provides the Customer with the relevant statements. In the absence of objection within the time specified by the Bank, the statements of accounts issued by the Bank are deemed to be approved, even where the confirmation statement duly signed by the Customer is not received by the Bank. Express or tacit approval of the statement of account includes approval of all items.

## 11. Foreign Currencies

Unless otherwise agreed, amounts in foreign currencies are credited and debited in Swiss Francs. In the event the Customer holds accounts in third currencies only, the Bank may, at its absolute discretion, credit and debit the Customer's accounts in any of said currencies.

## 12. Several Instructions

If the Customer has given several different instructions the total amount of which exceeds or may exceed the credit balance or the credit facilities granted to him, the Bank is entitled to execute, in its entire discretion and irrespective of their reception dates, which of the dispositions it wants to execute entirely or partly.

## 13. Bills of exchange

The Bank is entitled to redebit unpaid bills of exchange, checks drafts and other papers (the instruments) which have been discounted or credited. Until complete settlement of any debit balance created by any such redebit, the Bank nevertheless retains any rights resulting from any of the above instruments against any third party under any applicable law.

## 14. Termination

Except otherwise agreed, the Bank reserves the right to cancel any business relationships, including without limitation any outstanding loan and/or credit facilities promised or granted regardless if they are used or not. In such a case, any possible claims of the Bank will fall immediately due for repayment and the Bank reserves the right to charge the Customer interest on any amounts due and not paid on the due date.

## 15. Legal holidays

For all business relations with the Bank, Saturdays are equivalent to legal holidays, as well as any other day as the case may be.

## 16. Custodianship

The Bank will accept any kind of securities and other property including without limitation stocks, bonds, precious metals in an **open safekeeping account** as well as any other valuables and other appropriate items in a **sealed safekeeping deposit box**. Sealed deposits should not consist of any dangerous and/or inappropriate items unsuitable for custody and the Bank reserves the right to check the content of the sealed deposit in the Customer's presence and/or require evidence of nature thereof. The Bank undertakes to hold, register and administrate the property deposited with it in a safe place and with all due and necessary care. The Customer agrees that the Bank may deposit securities and other property in its own collective deposit or in a collective deposit in Switzerland and/or abroad. In the case of a collective deposit of fungibles, the Customer shall be considered the co-owner of the securities deposited in proportion to his share in the total amount of fungibles which shall comprise the fungibles held on behalf of the Customer. Securities deposited abroad are subject to the customs, rules and regulations of the relevant depository. In the event that securities and other property held in a collective deposit are drawn by lot, the Bank shall distribute the securities so drawn among the co-Customers by means of a second drawing by lot in order to guarantee fair and equitable treatment.

## 17. Safekeeping

As of the date of the respective deposit, and in the absence of contrary instructions, the Bank shall currently administer the assets, including without limitation collect dividends and interests, supervise drawings, calls, conversions, subscription rights, amortizations of securities based on available publications and shall generally perform any act it deems necessary for the customary administration of assets.

### 18. Voting Rights

The Bank will not (i) notify the Customer of any meetings which relate to his investments, (ii) attend any meetings on his behalf, or (iii) exercise any voting right attaching to any investments unless within a reasonable time prior to any meeting the Customer provides the Bank with his specific instructions to do so and the Bank accepts them in writing.

### 19. Advices

Receipt and entry advices may neither be transferred nor assigned nor pledged. The delivery of deposited items and assets will take place during the business hours and the Bank reserves the right to deliver abroad the assets and items which are deposited abroad.

### 20. Fees and Charges

The Bank will charge the Customer in accordance with its standard commission and fees schedule and is entitled to deduct said fees and charges from the account of the Customer as well as interest on any amounts due from the Customer which are not paid on the due date. Commission and Fees schedule may be amended from time to time.

### 21. Outsourcing

The Bank may appoint and use agents in Switzerland to perform all or part of its duties provided that the agent is bound by bank secrecy.

### 22. Amendments

The Bank may amend these Terms and Conditions and any amendment will take effect on the day specified on such revised Terms and Conditions.

### 23. Telephone recording

Telephone conversations with the Bank are normally recorded and the recording may be used as evidence of the circumstances.

### 24. Governing Law and Jurisdiction

**The present Terms and Conditions are governed by, and shall be construed in accordance with Swiss law.**

**The courts of Geneva, Switzerland will have jurisdiction to hear and determine any suit, action or proceedings and to settle any dispute which may arise out of or in connection with these Terms and Conditions and, for these purposes, each party irrevocably submits to the jurisdiction of the courts of Geneva, Switzerland and further agrees not to claim that the courts of Geneva, Switzerland are not a convenient or appropriate forum.**

**The submission to the jurisdiction of the courts of Geneva, Switzerland shall not limit the right of the Bank to take proceedings against the Customer in any other court of competent jurisdiction.**

I have read the present Terms and Conditions and declare to be bound by them.

Place and date **MEXICO, D.F.  JANUARY 13th, 2003**

Signature(s)




209983

2006700 — 380

Mandat de gestion a un tiers

# SG Private Banking (Suisse) S.A.

# Mandate entrusted to third parties for the administration of assets

Account number _____ 19116 / 2006700 (includes all rubrics)_____
                                        10 / 20 / 30 / 40

Account holder(s) _____ 19116 _____

The undersigned (hereinafter: "the Customer"), by virtue of this mandate, grant(s) the authority, without according the right to delegate such power, to:

| Surname, first name(s)<br>Corporate name<br>Registered office | Nationality<br>Date of birth<br>Date of incorporation | Signature |
|---|---|---|
| Atlas One Financial<br>Group LLC | July 01, 2001 | *[signature]* |

(hereinafter: "the Representative") to manage, on behalf of the Customer, the assets deposited in his/their account and/or deposit.

The Representative is authorised to:

- buy and sell all types of negotiable securities (equities or bonds), precious metals, currencies and other investment vehicles either on a cash or a forward basis;
- make short-term deposits on a fiduciary basis, at the sole risks of the Customer, in any country and in any currency;
- undertake any covered transaction (selling or buying) in the options or futures markets ; any other type of transaction in the options and futures markets shall only be undertaken if a specific authority is signed;
- accept, verify and ratify statements of account and/or deposit.

Furthermore, the Representative is expressly entitled to:

a) draw his management fees as agreed with the Customer.

[X] No    [ ] Yes    If Yes, signature _____

b) pledge the account under management to the Bank, but exclusively for the benefit of the Customer.

[X] No    [ ] Yes    If Yes, signature _____

**The Representative is not authorized, in any form whatever, to make withdrawals or dispositions in his favor or in favor of a third party, irrespective of whether such actions are carried out on his own behalf, or that of a third party, or that of the Customer.**

The present mandate remains in force if the Customer dies or is incapacitated.

**Exhibit B**


**PRIVATE BANKING**

# SG Private Banking (Suisse) S.A.

## Mandate entrusted to third parties for the administration of assets

Account number ___19116__ / _2006900 (includes all rubrics)_
_10 / 20 / 30 / 40_

Account holder(s) ___19116_____

The undersigned (hereinafter "the Customer"), by virtue of this mandate, grant(s) the authority, without according the right to delegate such power, to:

| Surname, first name(s) Corporate name Registered office | Nationality Date of birth Date of incorporation | Signature |
|---|---|---|
| **Atlas One Financial Group LLC** | **July 01, 2001** | _9anna_ |

(hereinafter: "the Representative") to manage, on behalf of the Customer, the assets deposited in his/their account and/or deposit.

The Representative is authorised to:

- buy and sell all types of negotiable securities (equities or bonds), precious metals, currencies and other investment vehicles either on a cash or a forward basis;
- make short-term deposits on a fiduciary basis, at the sole risks of the Customer, in any country and in any currency;
- undertake any covered transaction (selling or buying) in the options or futures markets ; any other type of transaction in the options and futures markets shall only be undertaken if a specific authority is signed;
- accept, verify and ratify statements of account and/or deposit.

Furthermore, the Representative is expressly entitled to:

a) draw his management fees as agreed with the Customer.

[X] No     [ ] Yes     If Yes, signature ___ _____  _____  _____

b) pledge the account under management to the Bank, but exclusively for the benefit of the Customer.

[X] No     [ ] Yes     If Yes, signature _____  _____  _____

**The Representative is not authorised, in any form whatsoever, to make withdrawals or dispositions in his favor or in favor of a third party, ~~irrespective of whether such actions~~ are carried out on his own behalf, or that of a third party, or that of the Customer.**

The present mandate remains in force if the Customer dies or is incapacitated.

423.145-e/12.03

The Customer acknowledges that the Bank exercises no control over the management operations of the Representative, even if such operations are not in keeping with those of Bank, based on the management mandates accorded by its clients. The Bank does not verify if the Representative respects the rules and directives of his profession. The Customer accepts that all information relative to investments made, and such risks as may be involved, are provided spontaneously by his Representative, with no responsibility whatever on the part of the Bank.

Provided that the Bank has accurately executed and recorded the operations directed by the Representative, the Customer relieves the Bank of all responsibility for the management operations performed by the Representative.

Any costs of remuneration of the Representative for introducing new clients, or ceding part of the commissions, are borne entirely by the Bank.

The present Agreement incorporates by reference and is subject to the Bank's standard Terms and Conditions.

Place and date   _Miami, Florida   June 26, 2005_

Signature of the Customer(s) _____

Signature of the
Representative _____

## Mandato otorgado a terceros para la administración de activos

Número de cuenta: <u>19116/2006900 (incluyendo todas las rúbricas)</u>

Titular(es) de la cuenta: <u>19116</u>      10/20/30/40

El suscrito (en lo sucesivo "el Cliente"), en virtud del presente mandato, otorga el poder, sin derecho a delegar el mismo, a:

| Apellido, nombre(s)<br>Razón social<br>Oficina registrada | Nacionalidad<br>Fecha de nacimiento<br>Fecha de creación | Firma |
|---|---|---|
| Atlas One Financial Group LLC | 1 de Julio de 2001 | /Firma illegible/ |

(en lo sucesivo "el Representante") para gestionar, en nombre del Cliente los activos depositados en su cuenta y/o hacer depósitos.

El Representante tiene autorización para:

- Comprar y vender todo tipo de títulos negociables (acciones o bonos), metales preciosos, divisas y otros vehículos de inversión, ya sea en efectivo o en forwards;
- Hacer depósitos a corto plazo en base fiduciaria al único riesgo del Cliente, en cualquier país y en cualquier divisa;
- Asumir cualquier transacción cubierta (de venta o compra) en mercados de opciones o de futuros; cualquier otro tipo de transacción en dichos mercados de opciones y futuros, sólo pueden asumirse pequeños si hay firma de una autoridad específica;
- Aceptar, verificar y ratificar declaraciones de cuentas y/o depósitos.

Además, el Representante tiene el derecho exclusivo para:

a) Percibir sus honorarios por gestión, según lo haya acordado con el Cliente.
    ☒ No ☐ Sí       En    caso    de    una    respuesta    afirmativa,    firme

b) Comprometer la cuenta gestionada al Banco, pero exclusivamente en beneficio del Cliente.
    ☒ No ☐ Sí       En    caso    de    una    respuesta    afirmativa,    firme

El **Representante no está autorizado de forma alguna para realizar retiros o disposiciones en su beneficio o el de tercero alguno, no obstante si dichas acciones las realiza en su nombre o el de tercero alguno, así como del Cliente.**

El presente mandato permanecerá vigente si el Cliente muere o está incapacitado.

El Cliente reconoce que **el Banco no ejercita control alguno** sobre las operaciones de gestión del Representante, aún cuando dichas operaciones no estén en línea con las del Banco, con base en los mandatos de gestión acordados por sus clientes. El Banco no verifica si el Representante respeta las reglas y directrices de su profesión. El Cliente acepta que puede estar incluida toda la información relacionada con las inversiones hechas, así como todos los riesgos, puede proporcionarlos su Representante de manera espontánea sin responsabilidad alguna de parte del Banco.

Siempre y cuando el Banco haya ejecutado con exactitud y registrado de la misma manera las operaciones que haya dirigido el Representante, el Cliente libera al Banco de toda responsabilidad por las operaciones de gestión que el Representante realice.

Cualquier costo de remuneración del Representante por la presentación de clientes nuevos o al ceder parte de sus comisiones corren completamente a costa del Banco.

El presente Acuerdo se incorpora por referencia y está sujeto a los términos y condiciones estándares del Banco.

Lugar y fecha     Miami, Florida a 26 de junio de 2005
Firma del/de los Cliente(s) /Firma ilegible/       /Firma ilegible/
Firma del Representante    /Firma ilegible/

Faltaria de darte la informacion del Phoenix. Espero tenerla para la proxima semana.
Lalo

2008/10/15 RAFAEL SELVAS CABALLERO <r_selvas@hotmail.com>

Estimado Eduardo:

Deseo agradecerte el haberte tomado la molestia de haber venido a verme el Domingo a mi casa para explicarme el desarrollo que ha tenido mi cartera durante este año.

Te agradezco haberme puesto en contacto con Sebastian Vega y en el último e:mail mandado a tí y a mí se compromete a enviarnos los cortes cada fin de semana.

Yo no sabia que los productos estructurados eran vendidos por Atlas y que tu eres el mejor indicado para darme más información sobre Autocall, Phoenix Ex, y Res Venus. El Domingo quedaste que me enviarias la información de cuando los contratamos y la publicidad (creo que utilizaste el termino Spread Sheets o algo parecido) cuando los promociono Atlas ante sus clientes y saber que fue lo que ofrecieron y tener la información de en donde esta invertido mi dinero. Sí creo que
no seguiste mis deseos al haber invertido en algo con tanto riesgo ya que siempre mi solicitud fue de utilizar productos de menor riesgo no importando su rendimiento.

Quisiera recordarte que yo empece a trabajar contigo cuando estabas en el banco y me cambiaste cuando te fuiste a trabajar a Atlas One, yo no tuve inconveniente porque tu estabas presente, pero ahora que me entere el Domingo que tu ya no trabajas con Atlas, sí quisiera saber en que posición estoy para que no me vuelva a tomar desprevenido cualquier cambio.

Te suplico le demos seguimiento a lo que te comprometiste en mi casa y saber si los papeles que firme para el contador ya estan siguiendo sus trámites y cuando el contador piensa que podría estar solucionado.

Recibe un saludo y mi solicitud de lo anterior, esperando tu pronta respuesta.

Rafael Selvas

Obtén 5GB de almacenamiento completamente gratis, sólo ven a Skydrive

**Exhibit C**

## Re: Seguimiento de compromisos

De: **Eduardo Arana** (lalo.arana@gmail.com)
Enviado: viernes, 17 de octubre de 2008 10:08:16 p.m.
Para: RAFAEL SELVAS CABALLERO (r_selvas@hotmail.com)
Datos adjuntos: BNP PARIBAS VENUS AAPL-COP-GOOG-NYSE.pdf (139.0 KB), CALYON Autocall on
AMX-EMC-FCX.pdf (108.6 KB), Autocall y Venus.xls (20.3 KB)

Rafa,
A continuacion te envio los "Term sheets" de las notas estructuradas donde vien toda la Inforacion e inclusive la fecha de emision. Como podras ver, estas notas las venden BNP PARIBAS (Banco Frances) y CALYON (Banco Frances) y NO ATLAS ONE!. Atlas One es un intermediario financiero que lo que hace es comprar estas notas en el mercado directamente a su emisores. Atlas One actua como intermediario como compraria un bono o una accion o cualquier otro instrumento en el mercado. Cuando Atlas One compra una nota como estas, el banco emisor (issuer) nos envia el "term sheet" a nosotros para que analizemos el producto. Si este nos parece una buena inversion, entonces les compramos a estos bancos sus notas estructuradas.
Porque en su momento estas Inversiones eran buenas? Porque tenian una proteccion a la baja del 25 a 30%, practicamente muy poco probable en condiciones normales de mercado, y el interes que pagan este tipo de notas estructuradas es entre el 9% y 11%.
Lo que paso con estas dos notas, y practicamente todas las notas existenetes en el mercado, se rompieron las barreras de proteccion con la a de los mercados que vivimos en Septiembre y Octubre, y por lo tanto su valuacion se bajo tanto.

Por ultimo tambien quede de enviarte un cuadro de como trabajan estas notas, el cual a continuacion te explico:

1.- En el autocall, el 12 de diciembre se hace una observacion a estas tres acciones, y se ve cual es la que bajo mas de su precio original. Entonces se toma este porcentaje, y es lo que se te regresa de la inversion original.
EJEMPLO: Supongamos que el 12 de Diciembre asi quedaron los precios, y la inversion original fue de $100,000, entonces FCX bajo un 63.78%, asi que el dia 13 de Dicembre nos esarian regresando la cantidad de $36,220.00

2.- En el VENUS, el 17 de Febrero se hace una observacion a estas cuatro acciones, y se ve cual es la que bajo mas de su precio original. Entonces se toma este porcentaje, y es lo que se te regresa de la inversion original pero en la accion fisica.
EJEMPLO: Supongamos que el 17 de Febrero asi quedaron los precios, y la inversion original fue de $100,000, entonces NYSE bajo un 56.64%, asi que el dia 18 de Febrero nos esarian regresando la cantidad de $43,360.00 en acciones de NYX

### AUTOCALL

|      | PRECIO INICIAL | PRECIO ACTUAL | %        |
|------|----------------|---------------|----------|
| AMX  | 59.5           | 33.8          | -43.1933 |
| EMC  | 19.24          | 9.61          | -50.052  |
| **FCX** | **91.11**   | **33**        | **-63.78** |

### VENUS

|      | PRECIO INICIAL | PRECIO ACTUAL | %        |
|------|----------------|---------------|----------|
| AAPL | 123            | 99            | -19.5122 |
| COP  | 75.43          | 52            | -31.0619 |
| GOOG | 513.9          | 372           | -27.6124 |
| **NYSE** | **69.2**   | **30**        | **-56.6474** |

2006700

*Rafael Selvas Caballero*


223757

2006700 994
Fecha de maintenance

México, D.F. a 26 de Enero de 2009.

**SG PRIVATE BANKING (SUISSE), S.A.**
RUE DE LA CORRATERIE 6, CASE POSTALE 5022
CH-1211 GENEVE 11

**At'n: Sebastien Vega**
**Independent Asset Managers Department**

Estimado Sr. Vega

Por medio de la presente solicito de ustedes se sirvan cancelar o revocar el "Mandate Entrusted to Third Parties for the Administration of Assets", otorgado a Eduardo Arana como representante de Atlas One Financial Group LLC., otorgado el 26 de Junio de 2005 en Miami, Florida.

Sirva la presente para cancelar dicho Mandato sobre las cuentas 19116, 19116 Rubrica 2, 19116 Rubrica 3, 19116 Rubrica 4 y 19116 Rubrica 5, a partir de la fecha de esta carta; es decir a partir del 26 de Enero de 2009.

Agradezco de antemano la atención dispensada a la presente.

Lugar y Fecha ~~México D.F. 26 Enero de 2009~~

Firma de los Clientes

Fichier Central
Signature vérifiée conforme

4 FEV. 2009

N. Glorioso

**Exhibit D**

## 19116 and Rubricas
De: **Eduardo Arana** (earana@Atlasone.com)
Enviado: martes, 03 de junio de 2008 05:11:22 p.m.
Para: r_selvas@hotmail.com
Datos adjuntos: image001.gif (2.5 KB), Eduardo.pdf (69.3 KB)

Rafa,
Aquí están las posiciones que me pediste. No hagas mucho caso en la valuación que le están dando al producto donde estamos invertidos, yo te explico verbalmente las razones. También, estamos con la intención de vender el snowball para colocarlo en un producto con mejor rendimiento que se nos esta presentando.
Llámame a mi celular cuando tengas estas posiciones en tu mano.
Lalo


Eduardo Arana
Executive Director
Atlas One Financial Group, LLC
200 S. Biscayne Blvd, suite 4400
Miami, FL 33131
(305) 960-2151/2141 (direct)
(305) 960-9995 (fax)
(786) 252-1331 (cell)
01-800 687-9991 (toll free – Mexico)
www.atlasone.com

*"The information contained in this message is privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is unlawful and strictly prohibited. The information contained in this message is for informational purposes only and should not be construed as a solicitation to purchase or sell securities or endorsement of any particular investment. Atlas One Financial Group, LLC makes no determination of the suitability of any investment for any particular user. We do not represent this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice."*

**From:** Pierre-Olivier NOVELLE [mailto:pierre-olivier.novelle@socgen.com]
**Sent:** Tuesday, June 03, 2008 11:58 AM
**To:** Eduardo Arana
**Subject:** Re: 19116 and Rubricas


Hola Gerardo,

Aqui lo tienes.

Un saludo,
Pierre



**SG**
**Private Banking**

## Exhibit E

**Pierre-Olivier Novelle**
Independent Asset Managers Department

**SG Private Banking (Suisse) S.A.**
Rue de la Corraterie 6, Case postale 5022
CH-1211 Genève 11
Tel    + 41 (0)22 819 46 76
Fax   + 41 (0)22 819 03 89
pierre-olivier.novelle@socgen.com

earana@Atlasone.com
03.06.2008 00:14

To  Pierre-Olivier.Novelle@socgen.com

cc

Subject  19116 and Rubricas

Pierre,
Can you please send me these positions as of last Friday close. Thank you.

**Eduardo Arana**
**Executive Director**
**Atlas One Financial Group, LLC**
**200 S. Biscayne Blvd, suite 4400**
**Miami, FL 33131**
**(305) 960-2151/2141 (direct)**
**(305) 960-9995 (fax)**
**(786) 252-1331 (cell)**
**01-800 687-9991 (toll free – Mexico)**
**www.atlasone.com**

"The information contained in this message is privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is unlawful and strictly prohibited. The information contained in this message is for informational purposes only and should not be construed as a solicitation to purchase or sell securities or endorsement of any particular investment. Atlas One Financial Group, LLC makes no determination of the suitability of any investment for any particular user. We do not represent this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice."

**************************************************************************

This message and any attachments (the "message") are confidential, intended solely

Any unauthorised use or dissemination is prohibited. E-mails are susceptible to alt

Neither SOCIETE GENERALE nor any of its subsidiaries or affiliates shall be liable

falsified.

************

Ce message et toutes les pièces jointes (ci-apres le "message") sont confidentiels

par le secret professionnel.

Ce message est etabli a l'intention exclusive de ses destinataires. Toute utilisat:

Tout message electronique est susceptible d'alteration.

La SOCIETE GENERALE et ses filiales declinent toute responsabilite au titre de ce r

*************************************************************************